## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
_____
                                :
HEATHER A. KLINE, by and through :   CIVIL ACTION
her Parent and Natural Guardian, :
STEPHANIE J. ARNDT,             :
                                :
              Plaintiffs,       :
                                :
         v.                     :   No. 03-4006
                                :
TROY PAUL MANSFIELD,            :
HAMBURG AREA SCHOOL DISTRICT, and :
JOSEPH PADASAK,                 :
              Defendants.       :
_____:
```

ARNOLD C. RAPOPORT
United States Magistrate Judge                SEPTEMBER 29, 2006

### MEMORANDUM

Presently before this Court is the Motion for Summary Judgment filed by Defendants Hamburg Area School District ("School District") and Joseph Padasak (collectively, "Moving Defendants") pursuant to Federal Rule of Civil Procedure 56©), and the Response, Reply and Sur-Reply filed thereto.  For the reasons that follow, the Motion will be granted, and Counts II and IV of the Complaint will be dismissed.

### I.    BACKGROUND.

When Plaintiff Heather Kline ("Heather") was a seventh grade student in the Hamburg Area School District ("School District") she was involved in a sexual relationship with Defendant Troy Paul Mansfield ("Mr. Mansfield"), a sixth grade teacher.  Mr. Mansfield was employed by the School District from the early 1990s through 2002, when he was suspended pending

investigation of criminal charges filed against him.  On March 17, 2004, Mr. Mansfield pled guilty to charges of Involuntary Deviate Sexual Intercourse, Unlawful Contact or Communication with a Minor, Aggravated Indecent Assault, and Corruption of Minors.  He is currently incarcerated.

Mr. Mansfield first encountered Heather when he taught her in the third grade.  Prior to the 2001-2002 school year, Mr. Mansfield requested and was granted a reassignment from Hamburg Elementary to the Hamburg Area Middle School ("Middle School"). During the 2001-2002 school year, Heather was in the seventh grade, and Mr. Mansfield taught sixth grade.  Defendant Dr. Joseph Padasak, Jr. ("Dr. Padasak"), was principal of the Middle School from 1996 through 2001.  (Mot. Summ. J., Ex. 4, pp. 8-9.)

Heather and her mother, Stephanie J. Arndt ("Mrs. Arndt") filed their five-Count Complaint on July 7, 2003, alleging that Heather was subject to sexual harassment and sexual abuse by Mr. Mansfield while Mr. Mansfield was a teacher and Heather was a student at the Middle School.  Plaintiffs' original Complaint contained the following claims: (1) violations of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688 against all Defendants (Count I); (2) violations of 42 U.S.C. section 1983 for infringement of Heather's rights to equal protection and privacy under the Fourth, Fifth, Ninth, and Fourteenth Amendments of the United States Constitution (Count

II); (3) intentional infliction of emotional distress against Mr. Mansfield only (Count III); (4) respondeat superior liability against the School District (Count IV); and (5) sexual assault and battery against Mr. Mansfield (Count V).  The case was originally assigned to the Honorable James Knoll Gardner.

On August 20, 2004, Plaintiffs filed a motion to amend their Complaint.  The motion was dismissed without prejudice on August 23, 2004.  On December 14, 2004, Plaintiffs filed a second motion to amend the Complaint, seeking to withdraw the Title IX claim, add a substantive due process claim, add a failure to train claim, and add facts regarding alleged misconduct of former Assistant School Superintendent Dr. Douglas Macbeth.  On September 21, 2005, Judge Gardner denied Plaintiffs' second motion to amend the Complaint.  Judge Gardner held that Plaintiffs were not permitted to add substantive due process claims, but Plaintiffs would be permitted to present evidence on the adequacy or inadequacy of the School District's training and policies.  The Court also stated that, "[w]hether particular pieces of evidence are admissible, such as the averments as to Dr. Macbeth, will be dealt with at an appropriate time prior to, or during, trial." See Sept. 21, 2005 Order, n.4.

Because Judge Gardner did not address Plaintiffs' request to withdraw the Title IX claim, Plaintiffs' counsel again sought to withdraw that claim during a November 4, 2005 status

3

conference with Judge Gardner.  On November 4, 2005, Judge
Gardner Ordered Plaintiffs' Title IX claim contained in Count I
of the Complaint dismissed with prejudice.  The parties executed
and filed a consent to try the case before this Court on December
9, 2005.

The School District and Dr. Padasak ("Moving
Defendants") move for summary judgment on the following claims:
Count II - violations of 42 U.S.C. section 1983 for infringement
of Heather's right to equal protection under the Fourteenth
Amendment and right to privacy under the Fourth, Fifth, Ninth,
and Fourteenth Amendments of the United States Constitution; and
Count IV - respondeat superior liability against the School
District.  Plaintiffs filed a Memorandum of Law opposing the
Motion, Defendants filed a Reply Brief, and Plaintiffs filed a
Sur-Reply Brief.

**II.  STANDARD**.

Pursuant to Rule 56©) of the Federal Rules of Civil
Procedure, summary judgment is proper "if there is no genuine
issue as to any material fact and the moving party is entitled to
judgment as a matter of law."  Fed. R. Civ. P. 56©).  The
essential inquiry is "whether the evidence presents a sufficient
disagreement to require submission to the jury or whether it is
so one-sided that one party must prevail as a matter of law."
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252 (1986).

The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party.  Anderson, 477 U.S. at 249.  A factual dispute is material only if it might affect the outcome of the suit under governing law.  Id. at 248.

        To defeat summary judgment, the non-moving party cannot rest on the pleadings, but rather that party must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  Similarly, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion.  Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989)(citing Celotex, 477 U.S. at 325).  The non-moving party has the burden of producing evidence to establish *prima facie* each element of its claim.  Celotex, 477 U.S. at 322-323.  If the court, in viewing all reasonable inferences in favor of the non-moving party, determines that there is no genuine issue of material fact, then summary judgment is proper.  Id. at 322; Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 83 (3d Cir. 1987).  When the non-

moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' - that is, pointing out to the District Court - that there is an absence of evidence to support the non-moving party's case."  Jones v. Indiana Area Sch. Dist., 397 F. Supp.2d 628, 642 (W.D. Pa. 2005) (quoting Celotex, 477 U.S. at 325).

III.    **DISCUSSION**.

    A.    **Plaintiff's Section 1983 Claims**.

        To establish a claim for civil rights liability pursuant to 42 U.S.C. section 1983, a plaintiff must show: (1) a defendant was acting under color of state law; and (2) that actor deprived them of a right, privilege, or immunity secured by the United States Constitution or federal law.  42 U.S.C. § 1983. Defendants, as employees of the Hamburg Area School District, qualify as state actors for purposes of section 1983 analysis. See Marcolongo v. Sch. Dist. of Phila., No. CIV.A. 98-5196, 1999 WL 1011899, at *5 (E.D. Pa. Nov. 5, 1999), aff'd, 262 F.3d 404 (3d Cir. 2001).  Plaintiffs allege violations of their right to equal protection under the Fourteenth Amendment and their right to privacy under the Fourth, Fifth, Ninth, and Fourteenth Amendments of the United States Constitution.  Moving Defendants claim that Plaintiffs have failed to set forth sufficient evidence to allow their case to go to a jury with respect to each of these claims.

6

Plaintiffs argue that Heather has a Fourteenth Amendment due process right to bodily integrity and to be free from sexual abuse.  They assert that Defendants have been on notice of this claim since July 7, 2003, when the Complaint was filed, because they inserted the catch-all phrase "including but not limited to," in the following paragraph of the Complaint:

> 39.   All Defendants by their conduct alleged herein intentionally, willfully and without justification did deprive the minor Heather, on grounds of her sex, of her rights privileges and immunities secured to her by the Constitution and the laws of the United States, **_including but not limited to,_** her rights to equal protection of the law as provided by the Fourteenth Amendment of the Constitution, and her right to privacy as protected by the Fourth, Fifth and Ninth and Fourteenth Amendments of Constitution in violation of 42 U.S.C. § 1983.

Compl, p. 7, ¶ 39 (emphasis added).  Defendants argue, in their Brief in Reply to Plaintiffs' Answer, that:

> [w]hat Plaintiff ignores, however, is that Plaintiff does not have a Fourteenth Amendment substantive due process claim based on a right to bodily integrity remaining in this case, following Judge Gardner's Order denying their motion to amend.  The only Fourteenth Amendment claims remaining in this case are: (1) equal protection; and, (2) right to privacy.  Although Judge Gardner permitted Plaintiff to proceed on a "failure to train" theory of liability against the School District, this did not give Plaintiff free reign to disregard the precise constitutional claims that she put forward in this case.

Defs.' Reply Br., p. 5.  Plaintiff counters that Judge Gardner "held that it was not necessary to amend because the complaint was adequate on its face.  Accordingly, the Defendants have waived any challenges they may have had and the Plaintiff has

more than sufficient authority to submit substantive due process violations." Pls.' Sur-Reply Br., p. 6. Plaintiffs link their interpretation of Judge Gardner's Order where he stated in a footnote that Plaintiffs had sufficiently put Defendants on notice of a failure to train claim with a supposed allowance of additional substantive due process violations. It is undisputed, however, that Judge Gardner denied Plaintiffs' second motion to amend the Complaint. In that motion, Plaintiffs sought to add additional substantive due process claims. Thus, Plaintiffs' constitutional claims are limited to Plaintiffs' Fourteenth Amendment right to equal protection, and right to privacy pursuant to the Fourth, Fifth, Ninth, and Fourteenth Amendments.

      1.   <u>Fourteenth Amendment Equal Protection</u>.

      In Count II of the Complaint for violations of 42 U.S.C. section 1983 against all Defendants, individually and in their official capacities as officials of the Hamburg Area School District, Plaintiffs specifically aver that:

> 38.  All Defendants had a duty to provide and ensure an educational environment for the minor, Heather, free of sexual innuendo, intimidation and harassment and to enforce the regulations, rules and laws necessary to protect the minor, Heather, from the acts of sexual abuse.

> 39.  All Defendants by their conduct alleged herein intentionally, willfully and without justification did deprive the minor Heather, on grounds of her sex, of her rights privileges and immunities secured to her by the Constitution and the laws of the United States, including but not limited to, her rights to equal protection of the law as provided by the Fourteenth

> Amendment of the Constitution, and her right to privacy
> as protected by the Fourth, Fifth and Ninth and
> Fourteenth Amendments of Constitution in violation of
> 42 U.S.C. § 1983.

Compl, p. 7, ¶ 39.  Moving Defendants contend that Plaintiffs
cannot support this equal protection allegation with any evidence
and they are entitled to summary judgment on this issue.  In a
section of the Complaint containing a recitation of factual
averments, Plaintiffs state that: "due to the sexual nature of
the relationship between Heather and Mansfield, Heather became
the object of stares, whispers and speculation by the students,
teachers, staff and administrators of the Middle School, and
remains so within the School District."  Compl., p. 5 ¶ 24.

   To state a claim based upon the Equal Protection
Clause, a plaintiff must allege that she is a member of a
protected class, she was similarly situated to members of an
unprotected class, and she was treated differently from the
unprotected class.  <u>Shuman ex rel. Shurtzer v. Penn Manor Sch.
Dist.</u>, 422 F.3d 141, 151 (3d Cir. 2005).  Thus, "[t]o bring a
successful claim under 42 U.S.C. § 1983 for a denial of equal
protection, plaintiffs must prove the existence of purposeful
discrimination. . . .In other words, they must demonstrate that
they received different treatment from that received by other
individuals *similarly situated*."  <u>Id.</u> (citing <u>Andrews v. City of
Phila.</u>, 895 F.2d 1469, 1478 (3d Cir. 1990) (citations omitted)).

   Plaintiffs do not allege that Heather was a member of a

protected class, she was similarly situated to members of an unprotected class, or that she was treated differently from the unprotected class. Rather, Plaintiffs merely state that Heather was "deprived . . . on grounds of her sex." Compl., p. 7 ¶ 39. Plaintiffs attempt to bolster their initial equal protection factual averment in the Complaint by stating in their Response to Defendants' Motion for Summary Judgment that, following Mansfield's arrest, the School District discriminated against Heather by *de facto* encouraging other students to harass or bully her. Plaintiffs specifically allege that:

> The Fourteenth Amendment mandates that no State "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV. The Equal Protection Clause safeguards not merely against such invidious classifications as race, gender and religion, but **any** arbitrary classification of persons for unfavorable governmental treatment. <u>Wayte v. United States</u>, 470 U.S. 598, 608, 105 S.Ct. 1524, 1531, 84 L. Ed.2d 547 (1985)(emphasis added). The essence of the Equal Protection Clause is a requirement that absent a rational basis for doing otherwise, the state must treat similarly situated persons alike. <u>Michelfelder v. Bensalem Tp. School Dist.</u>, 2000 WL 892866 (E.D. Pa. 2000)(citing <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439 (1985)).
>
> In the instant case, there is ample evidence of record that the Defendant School District discriminates against victims of sexual abuse by *de facto* encouraging other students to harass or bully them. Specifically, Heather's schoolmates called her a slut, a liar and a whore. Heather also had to endure rumors that she was pregnant or on drugs. Heather and her mother complained numerous times to school officials, yet nothing was done. The School District's only response was to have Heather eat lunch alone in the high school office. When Heather had a panic attack in the girls' restroom, the school nurse announced that Heather tried to kill herself because she was with a teacher. All of

this resulted in  Heather essentially being exiled from
her own school district.

      Clearly, Heather was offered virtually no
protection from the vile attacks from her fellow
students.  Perhaps the Defendants would argue that the
School District is not responsible for this second
round of abuse that Heather suffered at Hamburg.
However, Judge Anthony J. Scirica of the Third Circuit
Court of Appeals recently wrote that "[i]ntimidation of
one student by another, including intimidation by name
calling, is the kind of behavior school authorities are
expected to control or prevent." <u>Sypniewski v. Warren
Hills Regional Board of Education</u>, 307 F.3d 243 (3d
Cir. 2002).  Accordingly, Heather's Equal Protection
rights were violated by the School District's decision
to discriminate against victims of sexual abuse by *de
facto* encouraging other students to harass or bully
her.

Pls.' Mem. Law, pp. 22-23.  As Defendants note, Plaintiffs have

uncovered no evidence of any such encouragement in any form by

policymakers of the School District of victims of sexual abuse.

Plaintiffs further state in their Memorandum of Law that:

      When Heather returned to school for eighth grade
during the 2002-2003 school year, the School District
was abuzz with the news of the scandal.  Instead of
being treated with compassion, Heather was shunned,
harassed and ridiculed by students who blamed her for
getting one of the most popular teachers in the school
charged with sexual crimes.  Specifically, Heather's
schoolmates called her a slut, a liar and a whore.
(Deposition Transcript of Heather Kline, pages 22-24,
Defendants' Exhibit 1).  Heather's mother went to talk
to Mr. McGorry, now the principal, and, Mrs. Page, his
assistant, as well as the guidance counselor, several
times in the first ten days of the 2002-2003 school
year.  Nothing was done.  Therefore, Heather's mother
concluded that it was futile to complain any further.
(Deposition Transcript of Stephanie Arndt, pages 208-
210; Defendants' Exhibit 2).

      Heather, herself, went to see Principal McGorry
eight times during the 2002-2003 school year to
complain about the persistent name calling from fellow

students.  McGorry did nothing other than to tell her
to come back if it continued.  Heather said he and Ms.
Page listened but "they just seemed not to do anything
or just kind of ignored it, so I didn't want to waste
my time."  (Deposition Transcript of Heather Kline,
page 24; Defendants' Exhibit 1).  No one was ever
suspended or was otherwise disciplined for mistreating
Heather.  Id. at 29-30.

In the autumn of 2003, Heather entered Hamburg
High School as a ninth grade student.  As in the Middle
School, the administration at the High School did
nothing to prevent or even to discourage the ongoing
slurs and harassment that Heather endured.  One of the
chief sources of Heather's abuse was a classmate, named
Sarah, who told Heather she couldn't hang out with her
because she was a "slut" who slept with a teacher.
Heather took her problems to the counselor, Mrs. Wyles,
who in turn informed the new superintendent, Dr.
Kiefer.  Heather's mother also called Dr. Kiefer to
complain.  Kiefer said that he would take care of it
but there is no evidence that he did anything.
(Deposition Transcript of Heather Kline, pages 16-19;
Defendants' Exhibit 1).  Indeed, the harassment
intensified, leading to Heather having an altercation
with another girl in the lunchroom.  Id. at 26.  The
School District's response was to have Heather eat
lunch alone in the high school office.  (Deposition
Transcript of Stephanie Arndt, pages 206-207;
Defendant's Exhibit 2).  Thus, instead of adopting a
policy of no tolerance for the ongoing mistreatment,
the School District chose to isolate Heather from other
students, furthering her being a "marked person."

Students were not the only instigators of this
harassment.  Teachers and other school personnel would
say inappropriate things.  For instance, in October,
2003, Heather had a panic attack in the girls' restroom
and passed out.  This panic attack was caused in part
by rumors that she was pregnant, overdosed, miscarried,
or was shooting-up.  When she was found in the girls'
restroom, emergency medical services were called.  The
school nurse said to everybody in the restroom that
Heather tried to kill herself because she was with a
teacher.  Id. at 222-223.  This gratuitous comment made
Heather feel even more degraded and humiliated.

Ultimately, she could no longer bear this

emotional and physical trauma.  In November 2003,
Heather transferred to the Blue Mountain Academy, a
private school.  In the 2004-2005 school year, she was
initially home schooled.  Finally, she became a student
at the Muhlenberg Area School District.  The original
abuse that Heather suffered at the hands of Mansfield
and the School District's laissez faire approach to the
relationship was compounded by the School District's
subsequent inaction, which eventually drove her away
from her own school district.  This inaction is a
further violation of Heather's Constitutional rights
for which she is not seeking redress against the School
District.

Pls.' Mem. Law, pp. 7-9.  Despite this factual recitation,

Plaintiffs fail to identify other students similarly situated to

Heather.  Respondents note that discovery did not focus on anyone

other than Heather.  Aside from Plaintiffs' testimony, no

evidence has been presented that Heather was treated differently

from any other student in the Middle School or High School on the

basis of her gender.

Respondents correctly note that if Plaintiffs are

alleging that Heather was treated differently because of her sex,

she bears the burden of showing that her "sex was a substantial

factor in the discrimination and that if she had been a male, she

would not have been treated in a similar manner."  Heister v.

Fischer, 113 F. Supp.2d 742, 747 (E.D. Pa. 2000)(quoting Kent v.

Henderson, 77 F. Supp.2d 628, 635 (E.D. Pa. 1999) and citing

Andrews, 895 F.2d at 1485)).  Considering the evidence and any

reasonable inferences drawn therefrom in the light most favorable

to Plaintiffs as the nonmoving party, Anderson, 477 U.S. at 255,

Plaintiffs do not set forth facts amounting to a Fourteenth
Amendment equal protection violation to support their section
1983 claim.

      2.    <u>Right to Privacy</u>.

      Defendants also move for summary judgment on
Plaintiffs' claim that Heather's right to privacy found in the
Fourth, Fifth, Ninth and Fourteenth Amendments was violated.
Defendants contend that "none of the averments in the Complaint
disclose the factual basis underlying the right to privacy claim.
Further, during discovery, no facts were brought forth supporting
a violation of Heather's right to privacy." Defs.' Mem. Law, p.
17.  Plaintiffs, in their Response and Sur-Reply, do not respond
to this aspect of Moving Defendants' Motion for Summary Judgment.

      Respondents correctly cite case law setting forth the
two types of interests included under the privacy right: (1) "the
individual interest in avoiding disclosure of personal matters";
and (2) "the interest in independence in making certain kinds of
important decisions." <u>C.N. ex rel. J.N. v. Ridgewood Bd. of
Educ.</u>, 319 F. Supp.2d 483, 493 (D. N.J. 2004), <u>aff'd</u>, 430 F.3d
159 (3d Cir. 2005)(citing <u>Whalen v. Roe</u>, 429 U.S. 589, 599-600
(1977)).  The types of important decisions "have encompassed
matters relating to marriage, procreation, contraception, family
relationships, and child rearing and education." <u>Id.</u> (quoting
<u>U.S. v. Westinghouse Electric Corp.</u>, 638 F.2d 570, 577 (3d Cir.

14

1980)(quotation omitted)).  Plaintiffs have made no allegations
that Heather was prohibited from or coerced into making any kind
of decision affecting her personal life by the Moving Defendants.
In addition, there are no facts discernable by this Court
indicating that the Moving Defendants interfered with Heather's
relationship with her mother or other family members.  No one
overstepped the boundaries of school authority.  In fact, as
Respondents note, Mrs. Arndt claims that it would have been in
Heather's interest if the School District and Padasak *had*
overstepped their boundaries to determine if there was an
inappropriate relationship between Mr. Mansfield and Heather.  If
the Moving Defendants had done so, however, this would have
required them to question Heather about her activities both
inside and outside of school, including activities related to her
home life, questions that would implicate her privacy rights.

     There are also no facts to support the Plaintiffs'
claimed right of privacy as to the first type of privacy interest
involving individual interest in avoiding disclosure of personal
matters, which has been described as "the right not to have
intimate facts concerning one's life disclosed without one's
consent."  Defs.' Mem. Law, p. 19 (quoting <u>Bartnicki v. Vopper</u>,
200 F.3d 109, 122 (3d Cir. 1999), <u>aff'd</u>, 532 U.S. 514 (2001) and
<u>Whalen</u>, 429 U.S. at 599-600); <u>see</u> <u>also</u> <u>Paul P. v. Verniero</u>, 170
F.3d 396 (3d Cir. 1999).  Again, Plaintiff has not identified

what intimate facts concerning Heather's life were requested by the Moving Defendants or disclosed by them in violation of her constitutional right to privacy.  Moving Defendants are therefore entitled to summary judgment with respect to Plaintiffs' right to privacy claim.

To establish a claim for civil rights liability pursuant to 42 U.S.C. section 1983, Plaintiffs are required to show a deprivation of a right, privilege, or immunity secured by the United States Constitution or federal law.  42 U.S.C. § 1983. In this case, Plaintiffs cannot show a deprivation of their constitutional rights to privacy and equal protection, therefore their claim for section 1983 liability must be denied and Count II of their Complaint must be dismissed.[1]

**B.    Whether the School District is Liable Pursuant Respondeat Superior.**

Respondents next move for summary judgment on the claims contained in Count IV of Plaintiffs' Complaint. Plaintiffs assert a claim solely against the School District for Mr. Mansfield's actions.  In <u>Monell v. New York City Dep't of Soc. Servs.</u>, 436 U.S. 658 (1978), the Supreme Court concluded that:

---

[1] Although Mr. Mansfield did not move for Summary Judgment of Count II of the Complaint, the Court's analysis of Plaintiffs' claimed rights to equal protection and privacy effectively result in dismissal of Plaintiffs' section 1983 claim against not only the Moving Defendants, but also Mr. Mansfield.  Accordingly, Count II will be dismissed in its entirety.

16

> A local government may not be sued under § 1983 for an
> injury inflicted solely by its employees or agents.
> Instead, it is when execution of a government's policy
> or custom, whether made by its lawmakers or by those
> whose edicts or acts may fairly be said to represent
> official policy, inflicts the injury that the
> government as an entity is responsible under § 1983.

Id. at 694. Respondents correctly note that Monell rejects

government liability based on the respondeat superior doctrine in

actions brought under section 1983. Thus, a municipality may

only be held liable for the injuries directly attributable to its

actions, and not merely because it employs a tortfeasor such as

Mr. Mansfield. Kaucher v. County of Bucks, No. CIV.A. 03-1212,

2005 WL 283628, at *9 (E.D. Pa. Feb. 7, 2005), aff'd, 455 F.3d

418 (3d Cir. 2006)(citing Monell, 436 U.S. 658).

A municipality may be liable under section 1983 if its

policy or well-settled custom causes a constitutional injury.

Id. (citing Estate of Henderson v. City of Phila., 1999 U.S.

Dist. LEXIS 10367, at *56 (E.D. Pa. Jul. 9, 1999)(citing Monell,

436 U.S. at 694)). To obtain damages from a municipality, a

plaintiff must prove that "municipal policy makers established or

maintained a policy or custom which caused a municipal employee

to violate the plaintiff's constitutional rights." Id. (citing

Id.) Moreover, the policy must be the moving force behind the

constitutional tort, and the subject policy must also exhibit

deliberate indifference to the constitutional rights of those the

policy affects. Id. Thus, a plaintiff must also present

17

scienter such as evidence of indifference attributable to a particular policymaker or group of policymakers. Id. (citing Simmons v. City of Phila., 947 F.2d 1042, 1060-61 (1991)). "In the absence of any unconstitutional policy, plaintiff must articulate a factual basis demonstrating considerably more proof than a single incident to support her claim." Id. (citing House v. New Castle County, 824 F. Supp. 477, 486 (D.Del. 1985)(citing Oklahoma City v. Tuttle, 471 U.S. 808, 823-824 (1985)).

Here, as in C.M. v. Southeast Delco Sch. Dist., 828 F. Supp. 1179 (E.D. Pa. 1993), Plaintiffs offer no direct evidence that the School District adopted a formal policy which either condoned Mr. Mansfield's sexual conduct with Heather or discouraged reports of such conduct. Plaintiffs argue, on the other hand, that the School District's overall handling of Mr. Mansfield's behavior amounted to the adoption of a practice, custom, or policy of deliberate indifference to his conduct and to Heather's and other students' constitutional rights. The facts of this case differ, however, from those in C.M. and Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989), upon which the court in C.M. relied. In Stoneking, the evidence produced showed the defendant school officials had received at least five complaints about sexual assaults on female students by teachers and staff members; records of such complaints were kept secret; the allegedly offending teachers

18

were given excellent performance evaluations; and school officials discouraged parents and students from pursuing complaints. C.M., 828 F. Supp. at 1185.  In C.M., the plaintiff alleged one complaint about a teacher's sexual misconduct by a student, but plaintiff also alleged that teachers and other staff members made repeated complaints to school officials about that teacher's conduct.  Id.

The Third Circuit has held that "[i]n order to establish liability a plaintiff must demonstrate both that the defendant's policy, practice, or custom played an affirmative role in bringing about the sexual abuse and that the defendant acted with deliberate indifference to that abuse. C.M., 828 F. Supp. at 1186 (quoting Black by Black v. Indiana Area Sch. Dist., 985 F.2d 707, 712 (3d Cir. 1993)).  In the instant case, there was no indication to anyone from the School District that Mr. Mansfield was engaging in any sexual misconduct with Heather until after he was arrested.  A jury could not reasonably conclude, based on the facts of record, that any alleged custom, policy, or practice directly contributed to, led to, or caused the misconduct in question.  Moreover, as noted by Moving Defendants, Plaintiffs cannot show that the School District's policymakers or that Dr. Padasak in his role as Middle School Principal acted with deliberate indifference toward Plaintiffs' rights to equal protection and privacy.  Plaintiffs have produced

19

no evidence that Dr. Padasak or the School Board had any actual knowledge of prior instances of sexual abuse by Mr. Mansfield nor that they failed to take any action in response to such knowledge.  Thus, Plaintiffs have failed to show the requisite level of deliberate indifference necessary to maintain a <u>Monell</u> policy, custom or practice claim.

Plaintiffs' second basis for section 1983 municipal liability is pursuant to a failure to train theory.  The Third Circuit has outlined that the "failure to train can serve as the basis for § 1983 liability only 'where the failure to train amounts to deliberate indifference to the rights of persons with whom the [municipal employees] come into contact.'"  <u>Sostarecz v. Misko</u>, No. CIV.A. 97-2112, 1999 WL 239401, at *10 (E.D. Pa. Mar. 26, 1999)(quoting <u>Reitz v. County of Bucks</u>, 125 F.3d 139, 145 (3d Cir. 1997)(quoting <u>City of Canton v. Harris</u>, 489 U.S. 378, 388 (1989))).  Moreover "[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality . . . can a [state official] be liable for such a failure under § 1983."  <u>Id.</u> (quoting <u>Id.</u>)  To prevail on such a claim for failure to train, a plaintiff must "identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred."  <u>Id.</u> (citing <u>Id.</u> (quoting

Colburn v. Upper Darby Township, 946 F.2d 1017, 1030 (3d Cir. 1991))).

Plaintiffs allege that the School District should have had a policy of training employees to recognize and report signs of sexual abuse.  If such training were in place, they and their expert opine that Mr. Mansfield's sexual misconduct would have been detected or prevented.  Plaintiffs also allege that the School District knew of a history of sexual abuse of students by former Assistant Superintendent Douglas Macbeth and other teachers.  Plaintiffs contend that the School District was therefore on notice that there was an obvious need for such training.  They note that Dr. Macbeth was in charge of updating the School District policy book during his tenure at the School District from 1979 to October 1, 2004.  (Mot. Summ. J., Ex. 15, pp. 10, 11-31.)

Dr. Macbeth was involved in the hiring of Mr. Mansfield as a substitute teacher.  (Id. at 11.)  Mr. Mansfield testified at deposition that he was a friend of Dr. Macbeth's son when they were both youngsters and Dr. Macbeth molested him five times during the 1980 to 1981 school year.  Mr. Mansfield told no one of the alleged abuse until March of 2003.  (Mot. Summ. J., Ex. 3, p. 17.)  Dr. Macbeth vehemently denies these accusations.  (Id., Ex. 15, pp. 9, 98-103.)

To support their failure to train theory, Plaintiffs

21

offer a Pennsylvania State Police investigation conducted in
February and March of 1987 based upon allegations of sexual
misconduct involving a fifteen year old student, Chad Blackston
and Dr. Macbeth.  No evidence was revealed other than Blackston's
statement, therefore the investigation was closed.  (Mot. Summ.
J., Ex. 24.)  In 2004, Blackston recanted his former statements.
(Id., Ex. 33.)  Plaintiffs attach as Exhibit 3 to their Response
a letter from a teacher, Shawn Seidel to a supposed student
recipient.  (Pls.' Mem. Law, Ex. 3.)  Plaintiffs do not
substantiate that Seidel ever wrote this letter or that a student
ever received it.  Plaintiffs never identified Seidel, a student
recipient, or this letter during discovery or in their Pretrial
Motion.  Plaintiffs also attach an Affidavit executed by a
student named Ashley Hoffman to their Response.  (Id., Ex. 4.)
The Affidavit regards alleged conduct exhibited by a ninth grade
teacher and girls' softball coach named Clark Zimmerman.  This
was also not disclosed in discovery and relates incidents which
allegedly took place well after Mr. Mansfield's arrest.  The
letter and Affidavit could not lend support to Plaintiffs'
argument because the letter is unauthenticated and neither
document was produced during discovery.  Finally, Plaintiffs
attach docket sheets from a state court criminal case in which
Middle School teacher and boys' basketball coach Timothy Zweizig
was charged in February 2002 with Indecent Assault Without

22

Consent, Corruption of Minors, and Selling/ Furnishing Liquor to
Minors.  (Pls.' Resp., Ex. 2.)   These charges stemmed from
accusations that Mr. Zweizig hosted a party for the basketball
team and allegedly fondled one of the team members.  The Indecent
Assault Without Consent charges were dismissed, and Mr. Zweizig
was sentenced to a minimum of three months' imprisonment.

As evidence of teacher training, Moving Defendants have
produced the following policies which were adopted by the School
District against sexual harassment and sexual abuse: (1) the
Sexual Harassment Policy; (2) the Student Sexual Abuse/Harassment
and Child Abuse Reporting policies in the Staff Information Book
for Professional Employees; (3) the Protection from Sexual Abuse
and Harassment Policy in the Student Handbook; (4) the Sexual
Harassment policy in the Activities Calendar.  (Mot. Summ. J.,
Ex. 27.)   The School District also provided training at the
beginning of each school year as part of its teacher in-service
programs, including training on the subject of employee-student
sexual harassment.  (Id. at ¶ 10.)   Mr. Mansfield attended these
sessions.  (Id.)

In Johnson v. Elk Lake Sch. Dist., 283 F.3d 138 (3d
Cir. 2002), the Third Circuit reviewed the level of deliberate
indifference of policymakers in a section 1983 lawsuit involving
sexual abuse of a high school student by a guidance counselor.
The late Judge Edward Becker affirmed the District Court's grant

23

of summary judgment to the school district and superintendent.
The court concluded that the school district administration could
not "be held liable for failing to respond to the danger posed by
[the counselor's] well-known proclivity for sexually harassing
and abusing female students" based on "various stories and rumors
about [the counselor] walking too closely to female students in
the hallway, frequently calling female students out of class to
his office, and giving gifts to female students."  Id. at 144
n.1.  The court stated, in rejecting the plaintiff's claim that
the school district administrators were deliberately indifferent
to the counselor's potential for committing constitutional
violations:

> In the absence of any direct complaints made to school
> officials, the mere floating around of unsubstantiated
> rumors regarding a particular employee - particularly
> in the high school setting, which is notoriously rife
> with adolescent gossip - does not constitute the kind
> of notice for which a school district can be held
> liable under Monell's "policy or custom" requirement.

Id.  Mr. Mansfield knew that his relationship with Heather was
inappropriate and tried to hide his involvement with her from
everyone.  (Mot. Summ. J., Ex. 3, pp. 150-157.)  Moving
Defendants note that Plaintiffs' expert, Dr. Kent, conceded in
his deposition that he cannot say that if the School District had
varied its sexual harassment training, then this would have
prevented Mr. Mansfield from molesting Heather:

> A:   I'm talking about this type of training, risky
>      behavior type of training.  Would it have

prevented?  I think at one point I say in [my report] sometimes it's impossible to prevent something that's going to happen, but I think you can reduce the incidence of it and pick it up a lot earlier.

Q:   And you do use the word might in that sentence -

A:   Yes.

Q:   -- so you're not opining that it would have prevented it.

A:   No, I don't think anybody could make that statement about anything.  I think it's highly likely that it would help.

(Mot. Summ. J., Ex. 34, pp. 97-98.)  Plaintiffs have not shown that the School District acted with deliberate indifference to hold them liable for any alleged violation of Plaintiffs' constitutional rights.  As such, summary judgment will be granted to the Moving Defendants on Count IV of the Complaint.

IV.      **CONCLUSION**.

Plaintiffs' claims for violations of their Fourteenth Amendment right to equal protection and their right to privacy under the Fourth, Fifth, Ninth and Fourteenth Amendments fail. As such, Summary Judgment must be granted with respect to Count II of the Complaint, alleging violations of Plaintiffs' section 1983 claims.  Summary Judgment must also be granted with respect to Plaintiffs' claims against the School District for respondeat superior liability and failure to train in Count IV of the Complaint.

An appropriate Order follows.

25